UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IMPERIAL SUGAR COMPANY, | § § § |
| Plaintiff, | § § |
| v. | § CIVIL ACTION FILE § § NO.: |
| SOUTHERN SYSTEMS, INC., | § § |
| Defendant. | § <u>J U R Y</u> § |

## COMPLAINT FOR DAMAGES

**COMES NOW**, IMPERIAL SUGAR COMPANY, and submits this Complaint against SOUTHERN SYSTEMS, INC. In support of its Complaint, Imperial Sugar Company shows this honorable Court the following:

### PARTIES

1. Plaintiff IMPERIAL SUGAR COMPANY (hereinafter "Imperial" or "Plaintiff") is a Texas corporation, with its principal place of business in Sugar Land, Texas.

2. Defendant SOUTHERN SYSTEMS, INC. (hereinafter "SSI" or "Defendant") is a Tennessee Corporation, with its principal place of business at 4101 Viscount Avenue, Memphis, Tennessee 38118.

3. SSI may be served with process via its registered agent, Richard C. Beer, located at 1010 Rayford Road, Spring, Texas 77373.

## JURISDICTION AND VENUE

4. The Court has diversity jurisdiction over this action under 28 U.S.C. §1332 because Plaintiff and Defendant are citizens of different states, and the matter in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00). The Court further has jurisdiction pursuant to the forum-selection clause contained in Article 13.4.3 of the subject contract (hereinafter "Contract") entered into between Plaintiff and Defendant.

5. Venue is proper in this district because Defendant consented to personal jurisdiction in the state and federal courts of Houston, Harris County, Texas, through the forum-selection clause contained in Article 13.4.3 of the Contract. Article 13.4.3 designates any state or federal court in Houston, Harris County, Texas as the proper venue for any legal proceeding that bears a reasonable relationship to the transactions which are the subject of the Contract and states "both parties hereby consent to the jurisdiction of such courts."

## GENERAL ALLEGATIONS

### Contractual Relationship

6. On or about February 26, 2009, Imperial and SSI entered into a Contract providing for the slip-form construction of granulated sugar storage silos by SSI at Imperial's Port Wentworth, Georgia facility (hereinafter "Project"). (*See generally* Imperial-SSI Contract, for the Court's convenience a copy of the Contract and related documents is attached hereto as Exhibit "A").

7. Attachment II to the Contract provided lists of detailed drawings prepared by the design engineer, Borton, L.C. (hereinafter "Borton"), setting forth specific

requirements for the construction of all facets of the three sugar storage silos. (*See id.* at Attachment II).

8. The Contract further provided that the Project be substantially completed no later than July 26, 2009. (*See id.* at Article 3.3).

## Factual Background

9. SSI did not achieve substantial completion of the project on or prior to July 26, 2009, as required by the Contract. SSI achieved substantial completion on or about October 28, 2009. The delay in the completion of the Project was caused, at least in part, by SSI's job site supervisor's failure to properly manage materials added to the concrete mixture during the continuous pour process used to construct the silos' external walls. The improper concrete mixture required that the concrete walls be removed and re-poured above a certain height, resulting in significant delay to the project. This delay was not in any way caused by the actions of Imperial.

10. On or about December 30, 2009, Imperial began using the silos for granulated sugar storage. At that time, Imperial believed that the structural design requirements of the silos had been met and that the Project had been substantially completed.

11. The day Imperial began using the silos, it discovered that Silo #1 was leaking sugar at the top of the lower outer bin bottom hopper plate at the ring beam. Upon discovering the leak, Imperial ordered that the silos be inspected. Thereafter, a comprehensive investigation into the silo bin bottom installation was completed by numerous third parties. These inspections identified deficiencies in the welds, or

complete lack of welds, within certain areas of the metal cone construction in each of the three (3) silos at or around the bin bottom.

12. Borton served as the design engineer for all facets of the sugar silos. The Contract required SSI to construct the silos in accordance with the design specifications provided by Borton (hereinafter "Design Specifications").

13. Borton's design for the weld attachment of the lower outer or exterior bin bottom plate to the fabricated ring beam provided for two (2) one-fourth (¼) inch continuous field installed filet welds. One (1) filet weld was to be installed on the top side of the bin bottom plate, and one (1) filet weld was to be installed on the bottom on the underneath side. During the construction of the silos, SSI failed to install the filet weld required on the underneath side of the bin bottom plate. SSI's installation of the bin bottom connection was, therefore, not in compliance with the Design Specifications and constitutes a breach of the Contract by SSI.

14. The Design Specifications for the weld attachment of the upper hopper plate to the embedded weld plate provided for the installation of a five-eighths ($^5/_8$) inch thick by eight (8) inch wide hopper extension plate. The extension plate was required to be installed on the top side of the main hopper plate fitting into the embedded weld plate at a predetermined elevation.

15. With regard to Silo #1, the elevation of the extension plate attached to the embedded weld plate was incorrectly installed by SSI around the complete circumference of the attachment. The attachment exceeded allowable variations and over-stressed the top row of Nelson studs at the embedded weld plate. The installation elevation of the

upper hopper extension on Silo #1 to the embedded plate also did not conform to the Design Specifications and constitutes a breach of the Contract by SSI.

16. SSI's installation of the upper hopper extension plate to the embedded weld plate for Silo #1 for approximately one-sixth ($^1/_6$) of the attachment circumference was not in conformance with the Design Specifications and constitutes a breach of the Contract by SSI.

17. The Design Specifications further required a continuous five-sixteenth ($^5/_{16}$) inch filet weld where the upper hopper extension plate bottom was welded to the upper hopper plate in Silo #1. SSI instead used an undersized one-fourth (¼) inch convex filet weld and failed to weld a two (2) inch section. The weld installed by SSI was therefore not installed in conformance with the Design Specifications and constitutes a breach of the Contract by SSI.

18. Further deficiencies in SSI's construction of Silo #1 include the following: (1) missing welds at structural and non-structural locations; (2) improper completion of W36 shed plates; (3) incomplete welding of beam clip angles; and (3) air plenum installation deficiencies. By deficiently constructing Silo #1, SSI failed to conform to the Design Specifications, and therefore, SSI's deficient construction of Silo #1 constitutes a breach of the Contract by SSI.

19. The welding procedure utilized for the bin bottom installation for Silo #1 did not comply with the Steel Notes provided on Drawing H-1 of the Contract documents. Note Four (4) of that document specifically states that the installer must "[u]se E70XX welding electrodes." SSI failed to use welding electrodes during the welding process, in violation of the Design Specifications and the Contract.

20. Deficiencies similar to those set forth above with regard to Silo #1 were also found in Silos # 2 and # 3. SSI failed to construct Silos # 2 and # 3 in conformance with the Design Specifications. SSI's failure to construct Silos # 2 and # 3 in compliance with the Design Specifications constitutes a breach of the Contract by SSI.

21. The Design Specifications for all three (3) silos also required the installation of explosion vents by SSI.

22. The explosion vent Design Specifications required the vents to be installed using a one-piece inlet frame and a one-piece outlet frame.

23. The inside dimensions of the explosion vent frames were required to match the inside dimensions of the explosion panels within plus or minus one-sixteenth ($^1/_{16}$) of an inch. Each bolt hole in the inlet/outlet frames was required to match the specified bolting dimensions of the explosion panel within plus or minus one-thirty-second ($^1/_{32}$) of an inch.

24. The bolting of the inlet and outlet frames was required to match such that if the outlet frame were rotated one hundred and eighty (180) degrees, it would still match the bolt holes on the inlet frame.

25. The frames were required to be flat within plus or minus one-sixteenth ($^1/_{16}$) of an inch in the situation where the long side dimension of the frame was less than twenty-four (24) inches. Where the long side dimensions were greater than or equal to twenty-four (24) inches, the frames were required to be flat within plus or minus one-eighth ($^1/_8$) of an inch.

26. SSI failed to install the explosion vents and panels consistent with the Design Specifications, resulting in Imperial being required to hire a third-party contractor to replace all vents and panels at a significant cost to Imperial.

27. SSI's improper installation of the explosion vents and panels resulted in a failure of the explosion vents to serve their essential purpose as designed.

28. SSI's noncompliance with the Contract terms and Design Specifications in constructing the explosion vents, along with SSI's defective workmanship in constructing the explosion vents, constitute breaches of the Contract by SSI.

29. Following consultation with numerous third-parties, including Borton, the design engineer, and Ebmeier Engineering, LLC (hereinafter "Ebmeier"), the Project engineer, a repair plan was developed and agreed-to by all parties. The repairs outlined in the repair plan were required to rectify SSI's work that was not in compliance with the Contract terms and Design Specifications.

30. The repair process was initiated on November 25, 2010, and certified as completed by Ebmeier on February 2, 2011.

31. Imperial incurred significant costs associated with the necessity of the repairs, the repair process, and the repair plan itself, which have not been reimbursed by SSI as required by the Contract. SSI's failure to reimburse Imperial for its costs associated with repair process constitute a breach of the Contract by SSI.

32. SSI was obligated to procure a performance bond pursuant to terms of the Contract. Imperial paid SSI Forty-Seven Thousand Eight Hundred Sixty-Four Dollars ($47,864.00) in exchange for SSI's purchase of the performance bond. Despite SSI's

obligation to procure the bond and it's acceptance of the $47,864.00, SSI failed to purchase a performance bond.

## COUNT I – BREACH OF CONTRACT

33. Imperial incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

34. The Contract required that SSI be responsible for the slip-form construction of granulated sugar stored in silos at Imperial's Port Wentworth, Georgia.

35. SSI breached its contractual duties to Imperial by:

   a. Failing to substantially complete the Project by the Contract deadline of July 26, 2009;

   b. Failing to complete all required welds in accordance with the Design Specifications;

   c. Installing deficient welds which failed to meet the Design Specifications;

   d. Failing to properly install the extension plates for all silos in accordance with the Design Specifications;

   e. Failing to properly install the explosion vents in accordance with the Design Specifications;

   f. Failing to exercise due care with respect to its work on the Project;

   g. Failing to adequately train, supervise, and direct the work of its employees and subcontractors at Imperial's property in order to assure compliance with the Design Specifications and Contract terms;

    h.    Failing to procure a performance bond pursuant to the terms of the Contract; and

    i.    Otherwise failing to fulfill its contractual obligations.

36.    As a result of SSI's breaches of the Contract, Imperial suffered significant damages in an amount to be proven at trial.

WHEREFORE, Imperial demands judgment in its favor and against SSI in an amount to be proven at trial.

## COUNT II – BREACH OF WARRANTY

37.    Imperial incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

38.    SSI warranted to Imperial that its work would be performed in a good and workmanlike manner.

39.    SSI breached this warranty to Imperial by:

    a.    Failing to substantially complete the Project by the Contract deadline of July 26, 2009;

    b.    Failing to complete all required welds in accordance with the Design Specifications;

    c.    Installing deficient welds which failed to meet the Design Specifications;

    d.    Failing to properly install the extension plates for all silos in accordance with the Design Specifications;

    e.    Failing to properly install the explosion vents in accordance with the Design Specifications;

f. Failing to exercise due care with respect to its work on the Project; and

g. Failing to adequately train, supervise, and direct the work of its employees and subcontractors at Imperial's property in order to assure compliance with the Design Specifications and Contract terms.

40. SSI's failure to perform its work in a good and workmanlike manner caused and/or contributed Imperial to incur significant damages in an amount to be proven at trial.

WHEREFORE, Imperial demands judgment in its favor and against SSI in an amount to be proven at trial.

## COUNT III – NEGLIGENCE

41. Imperial incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

42. SSI was negligent in its actions related to the Project as follows:

a. Failing to substantially complete the Project by the Contract deadline of July 26, 2009;

b. Failing to complete all required welds in accordance with the Design Specifications;

c. Installing deficient welds which failed to meet the Design Specifications;

d. Failing to properly install the extension plates for all silos in accordance with the Design Specifications;

  e. Failing to properly install the explosion vents in accordance with the Design Specifications;

  f. Failing to exercise due care with respect to its work on the Project;

  g. Failing to adequately train, supervise, and direct the work of its employees and subcontractors at Imperial's property in order to assure compliance with the Design Specifications and Contract terms; and

  h. Otherwise failing to fulfill its contractual obligations.

43. SSI's negligence, including but not limited to, the negligent acts set forth above, proximately caused Imperial to incur significant damages in an amount to be proven at trial.

WHEREFORE, Imperial demands judgment in its favor and against SSI in an amount to be proven at trial.

## COUNT IV – FRAUD

44. Imperial incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

45. Pursuant to the Contract, SSI represented to Imperial that it would procure a performance bond.

46. At the time said representation was made, SSI was aware that it would not purchase the required performance bond.

47. Despite its knowledge to the contrary, SSI intentionally represented that it would purchase the required bond.

48. SSI made said representations to Imperial intending to induce Imperial to enter into the Contract.

49. Imperial justifiably relied on SSI's promise to procure a performance bond in entering into the Contract.

50. Imperial paid SSI Forty-Seven Thousand Eight Hundred Sixty-Four Dollars ($47,864.00) in exchange for SSI's purchase of a performance bond.

51. Despite SSI's obligation to procure a performance bond and its acceptance of the Forty-Seven Thousand Eight Hundred Sixty-Four Dollars ($47,864.00), SSI failed to purchase a performance bond.

52. Because of this fraud, Imperial has incurred significant damages in an amount to be proven at trial.

## COUNT V – ATTORNEY'S FEES

53. Imperial incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

54. Article 13.9 of the Contract provides that "[i]n the event the Contractor or the Owner defaults…under any of the Contract Documents and the non-defaulting party engages an attorney and institutes any legal proceedings…,the prevailing party…shall be entitled to reimbursement from the non-prevailing party of all reasonable expenses and attorney's fees…"

55. The Defendant's breach of the Contract as described in the foregoing and the resulting loss to Imperial have required Imperial to engage the attorney whose name is subscribed to this Complaint in order to enforce Imperial's contractual rights.

Accordingly, Imperial is entitled to recover from SSI all reasonable expenses and attorney's fees it incurs while enforcing its rights under the Contract.

## JURY DEMAND

56. Imperial hereby demands a trial by jury of twelve (12) as to all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Imperial prays for judgment against the Defendant as follows:

1. For judgment against the Defendant on Counts I, II, III, IV, and V;

2. For damages incurred in excess of $1,000,000.00;

3. For reasonable attorney's fees and costs of suit;

4. That Imperial be awarded all interest and costs to which it is entitled at law, including all pre-judgment and post-judgment interest; and

5. For such other and further relief as the Court deems just and proper.

This the 16th day of March, 2011.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

/s/ *John T. Flynn*
John T. Flynn
Attorney in Charge
Texas Bar No. 07198300
Federal ID No. 33704

3344 Peachtree Rd., NE, Suite 2400
Atlanta, Georgia 30326
Ph. 404-876-2700/Fax 404-875-9433
Email: jflynn@wwhgd.com